UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NOVATECH SOLUTIONS INC,

        Plaintiff,

v.

                                 Case No. 18-cv-2037-bhl

INTEGRATION PARTNERS CORPORATION,

        Defendant.

---

## DECISION AND ORDER

---

        Plaintiff NovaTech Solutions, Inc. (NovaTech) and defendant Integration Partners Corporation (IPC) attempted to collaborate in landing a contract to update Milwaukee County's telephone systems. After an initial bid attempt failed, the parties renewed their efforts in response to a second bid request, but changes in the bid response limited NovaTech's ability to partner with IPC. Accordingly, when the County accepted IPC's bid on the second request, IPC and NovaTech were unable to come to final agreement on NovaTech's participation in the project and NovaTech provided no services to the County. Believing it should nevertheless get some compensation from the awarded contract, NovaTech brings claims against IPC for breach of contract, or, in the alternative, unjust enrichment and promissory estoppel. IPC has moved for summary judgment on all claims. For the following reasons, IPC's motion will be granted.

## FACTUAL BACKGROUND

### 1. The Parties and Milwaukee County's TBE Program

        IPC is an information-technology services engineering firm that provides enterprise-level cloud, security, collaboration, core-infrastructure, and managed services. (ECF No. 26-2 at ¶1.) NovaTech is a full-service information technology integration and services company, owned and operated by Ruth Brash. (ECF Nos. 32 at ¶1, 38 at ¶24.) As of November 2017, NovaTech was certified as a Disadvantaged Business Entity (DBE) and a Woman-Owned Business Entity for purposes of participating in Milwaukee County contracts requiring a Targeted Business Entity (TBE) commitment. (ECF No. 38 at ¶2.)

Milwaukee County's TBE program is overseen by Milwaukee County's Community Business Development Partners (CBDP). (ECF No. 34 at ¶5.) The CBDP oversees and implements a program for DBEs as required in connection with the receipt of federal funds from the U.S. Department of Transportation. (ECF No. 34 at ¶6.) The CBDP also oversees a separate voluntary program to support TBEs for projects that are not subject to federal DBE requirements. (ECF No. 34 at ¶6.) Milwaukee County's TBE program is not required by any federal law or policy but is designed to encourage participation in Milwaukee County's contracts by business entities that may fit into a disadvantaged category, even if they do not qualify as a DBE. (ECF No. 34 at ¶6.) During the time relevant to this lawsuit, Rick Norris served as the director of the Milwaukee County's CBDP. (ECF No. 26-2 at ¶5.)

**2. The 2016 RFP**

In 2016, Milwaukee County issued Request for Proposal No. 98160022 (the "2016 RFP"), soliciting bids to establish one or more unified communications systems and replace legacy telephone and voicemail systems for several buildings and offices, including the Milwaukee County Airport, Courthouse, Milwaukee Transit System, and other County facilities. (ECF No. 34 at ¶3.) The 2016 RFP was subject to Milwaukee County's TBE program. (ECF No. 34 at ¶4.) Accordingly, the CBDP worked with other Milwaukee County departments to establish a TBE goal for the project, ultimately set at 10%. (ECF Nos. 34 at ¶5, 38 at ¶3.)

Paul Syrvalin, an IPC Sales Engineer involved in coordinating IPC's bid for the 2016 RFP, identified NovaTech as an eligible TBE firm that IPC might partner with on the 2016 RFP. (ECF Nos. 34 at ¶7, 38 at ¶3.) Accordingly, Syrvalin emailed Brash on June 2, 2016 to "explore a fit in responding together" to the 2016 RFP. (*Id.*) Because IPC generally refrains from partnering with other companies who are also working with competing bidders on a given RFP, Syrvalin asked Brash to let him know if NovaTech was already working with another company to respond to the 2016 RFP.[1] (ECF No. 38 at ¶4.)

On June 7, 2016, Syrvalin contacted Brash to set up a call to introduce NovaTech to IPC's Managing Partner in charge of its Midwest operations. (ECF No. 38 at ¶5.) In the email, Syrvalin

---

[1] Another prospective bidder contacted NovaTech shortly after Syrvalin's email, inquiring about NovaTech's participation in the 2016 RFP. (ECF No. 34 at ¶96.) Brash admits she does not recall much about the inquiry, including the names of the company and the person who contacted NovaTech, whether that company ultimately bid on the 2016 RFP or 2017 RFP, what NovaTech would have been asked to do on that project, or how much NovaTech could have earned if it had joined with the other prospective bidder and if that bidder had been awarded the project. (ECF No. 34 at ¶96.)

told Brash that "[w]e'll need to sign an agreement of understanding: just standard stuff." (ECF No. 38 at ¶5.) As part of IPC's response to the 2016 RFP, on June 28, 2016, IPC and NovaTech each signed a "Commitment to Contract with DBE." (ECF Nos. 34 at ¶9, 38 at ¶6.) Syrvalin handwrote several terms into the 2016 Commitment to Contract with DBE, including the total contract amount ($4,599,801.62), DBE goal (10%), DBE contract amount ($892,395.07), percent of total contract (13.82%), and scope of work detailed description (phone equipment acquisition, equipment placement, and project management services). (ECF No. 38 at ¶6.)

IPC's response to the 2016 RFP was not selected, and the project was awarded to a different bidder. (ECF No. 26-2 at ¶2.) Not all was lost, however. Another losing bidder objected to the award of the project, after which the County withdrew the 2016 RFP and announced it would issue a new RFP. (ECF No. 26-2 at ¶2.)

### 3. The 2017 RFP

Milwaukee County issued RFP No. 98170015 (the "2017 RFP") on October 30, 2017. (ECF No. 26-2 at ¶3.) The TBE participation requirement for the revised project was again 10%. (ECF No. 34 at ¶19.) After the County withdrew the 2016 RFP, the bids on that RFP became public, allowing IPC to identify ways to make its pricing more competitive. (ECF No. 34 at ¶22.) As a result, IPC proposed a different Avaya telephone system solution in response to the new RFP. (ECF No. 34 at ¶22.)

On November 1, 2017, Jeff Morgan, IPC's Account Manager responsible for the 2017 RFP, sent Brash a blank copy of the 2017 Commitment to Contract with TBE associated with the 2017 RFP, and asked Brash to fill out NovaTech's signature, title, and contact information. (ECF No. 38 at ¶12.) Brash replied that she would not sign the document without knowing the terms IPC proposed for the work to be completed by NovaTech. (ECF No. 38 at ¶12.)

Ultimately, on November 27, 2017, IPC and NovaTech executed a "Commitment to Contract with TBE" form for the 2017 RFP (the "2017 TBE Form"). (ECF Nos. 34 at ¶26; 38 at ¶13.) Drafted by Morgan, the 2017 TBE Form listed a total contract amount of $3,794,792, a TBE goal of 10%, a scope of work describing phone equipment racking, placement, and project management services, and a TBE contract amount of $400,350, which was further described as 10.5% of the total contract. (ECF No. 34 at ¶26, 38 at ¶14.) IPC submitted its response to the 2017 RFP on November 27, 2017. (ECF No. 26-2 at ¶4.)

When IPC filled out and executed the 2017 TBE Form, it understood that the 10% TBE participation goal applied to the total price of the project, which included procurement of equipment, installation, training, and maintenance. (ECF Nos. 34 at ¶28; 38 at ¶15.) The services that NovaTech was expected to perform included: (1) mounting racks to contain telephone servers, which included screwing the racks into a frame; (2) placing phone sets, which included unboxing a phone, plugging it in, configuring the phone, and placing a test call; and (3) overseeing and managing the personnel NovaTech used to perform the racking and phone placement services. (ECF No. 34 at ¶27.) NovaTech did not have the skills and expertise to participate in programming the Avaya system, which was a significant component of the project. (ECF No. 34 at ¶34.)

At the time that NovaTech signed the 2017 TBE Form, it expected to use an independent contractor to perform much of the work to be assigned to it, but NovaTech did not know how much it would have to pay that independent contractor. (ECF No. 34 at ¶97.) NovaTech expected to pay between $50 per hour to $212 per hour, depending on the qualifications of the independent contractor. (ECF No. 34 at ¶98.) NovaTech further expected to earn $350,000-$375,000 in gross profit on the project, after the cost of labor, because NovaTech expected that most of its work would be related to project management. (ECF No. 34 at ¶99.)

### 4. The 2017 RFP Award and the Dispute

On January 16, 2018, IPC learned that the County intended to award the project to IPC, pending final negotiations and contract approval. (ECF Nos. 34 at ¶38; 38 at ¶21.) On May 8, 2018, Milwaukee County and IPC entered into a Master Services Agreement for the project. (ECF No. 34 at ¶42.) In addition to the Master Services Agreement, Milwaukee County and IPC developed and agreed to a Statement of Work for each phase of the project.[2] (ECF No. 34 at ¶49.)

NovaTech's role in performing the County contract was complicated by the inclusion of Avaya products in the final bid. NovaTech was not certified by Avaya to sell or perform maintenance on Avaya products. (ECF No. 34 at ¶58.) And Milwaukee County expected that the technicians performing the phone placement would be certified by the phone system manufacturer, which in this case was Avaya. (ECF No. 34 at ¶59.)

In May 2018, Norris, the County official overseeing the TBE program, informed IPC and NovaTech that the TBE commitment would *not* apply to the full price of IPC's contract with

---

[2] There have been at least seven amendments to IPC's contract with Milwaukee County, either expanding or modifying the Statement of Work. (ECF No. 34 at ¶50.)

Milwaukee County. (ECF No. 34 at ¶53.) Norris further confirmed that the TBE commitment also did not apply to the procurement of equipment. (ECF No. 34 at ¶54.)

As of May 15, 2018, IPC and Milwaukee County were still working on a plan for installation of the phone system at the airport. (ECF No. 34 at ¶61.) On the same day, Brash left Morgan a voicemail telling him that they needed to "pound this contract out." (ECF No. 34 at ¶75.) NovaTech acknowledged that several of the parties' alleged commitments to each other did not appear in the 2017 TBE Form, including: (1) how and when NovaTech would be paid; (2) any schedule or deadline for NovaTech to complete the phone equipment racking or phone placement; (3) who would procure the equipment or hardware for NovaTech to install; (4) that NovaTech would be responsible for disposing the boxes or other refuse generated from unboxing the phones; (5) the number of phones NovaTech would install; (6) whether NovaTech would have to perform any configuration for the phones; and (7) that NovaTech would provide project management services "as required to facilitate a timely and efficient implementation of the project." (ECF No. 34 at ¶82 (quoting Exh. 93).) With respect to the project management services, Brash testified she "kept it very fluid as they did, so whatever they needed me to do basically besides oversee the phone placement and servers." (ECF No. 34 at ¶83 (quoting Exh. 115).)

The parties have divergent views of where the project stood at this point. According to IPC, the project was approaching "a critical path deadline to get things done" and the ongoing negotiations with NovaTech were becoming "problematic" for Milwaukee County's timely implementation of the project. (ECF No. 34 at ¶87.) Accordingly, Milwaukee County insisted that the project continue to move forward despite any ongoing negotiations between IPC and NovaTech, because Milwaukee County "had a critical deadline" to meet. (ECF No. 34 at ¶87.) Norris encouraged NovaTech to find any opportunity for it to participate in the project before Milwaukee County administrators instructed CBDP and IPC to move forward without NovaTech. (ECF No. 34 at ¶68.)

On May 31, 2018, IPC sent NovaTech a proposed Scope of Work for Phase 1 of the project and asked NovaTech to provide a quote. (ECF No. 34 at ¶¶62-63.) NovaTech admits that the proposed Scope of Work reflected tasks and commitments that were not reflected on the 2017 TBE Form. (ECF No. 34 at ¶62.) However, NovaTech never identified any services that it could provide in response to the Scope of Work. (ECF No. 34 at ¶63.) NovaTech claims the uncertainty of the schedule prevented it from committing to terms with IPC, and that it was unable to quote a

price without knowing the start date, implementation schedule, and worksite locations. (ECF No. 34 at ¶64.) NovaTech admits that IPC made no actionable promise, or any promise at all, outside of the 2017 TBE Form. (ECF No. 34 at ¶¶85-86.)

> On June 29, 2018, Brash sent an email to IPC and Milwaukee County stating:
>
> Thank you for meeting with me this week and providing some clarity on IPC's current expectations of Novatech Solutions in regard RFP 98170015. As you know the scope and amount of work offered has changed substantially since the time that IPC committed to contract with Novatech. Most notably, the TBE Contract Amount has been reduced from $400,350 to $218,260 over Novatech's objection and much to Novatech's disadvantage. Currently, IPC has offered to pay $218,260 in exchange for Novatech unboxing, placing and testing, etc. approximately 7000 phone sets at various locations at yet undetermined times over the next two years and the project management associated therewith. You estimate that the time needed for just the physical labor involved is approximately 30 minutes per phone without consideration to project management or the other time and costs associated with such an undertaking. Simply put, Novatech cannot and will not commit to that scope of work for the $218,260 offered. Novatech remains willing to discuss a different scope, but does so without prejudice to its rights under the original Commitment to Contract and the applicable law. Please let me know if this is IPC's final offer.
>
> (ECF No. 34 at ¶69.)

On the basis of Brash's statement that NovaTech "cannot and will not commit to that scope of work for the $218,260 offered," Norris, with full authority on behalf of Milwaukee County, released IPC from the TBE commitment. (ECF No. 34 at ¶¶70-71.) NovaTech never responded to Norris or otherwise sought to correct his perception that NovaTech was withdrawing from the project. (ECF No. 34 at ¶70.) NovaTech then filed suit against IPC. As of January 7, 2020, IPC had paid its substitute TBE contractor only $51,829.34, or roughly 2.5% of the project revenue. (ECF No. 38 at ¶32.)

## SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over "a material fact is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the moving party meets this burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

I. **NovaTech's Breach of Contract Claim Fails For Lack of Evidence of a Final, Binding Contract and Damages.**

NovaTech's first claim is for breach of contract. (ECF No. 1-1 at ¶¶35-48.) Count I of the complaint alleges that the 2017 TBE Form "constitutes a binding agreement between IPC and NovaTech … because IPC and NovaTech intended for the terms of the [2017 TBE Form] to become immediately enforceable upon … execution." (ECF No. 1-1 at ¶37.) NovaTech further asserts that IPC breached the 2017 TBE Form contract "by refusing to permit NovaTech to perform the telephone-equipment racking, placement, and project-management services contemplated thereunder and to pay NovaTech $400,350.00 for such work." (*Id.* at ¶44.)

To prevail on its claim for breach of contract under Wisconsin law, NovaTech must establish "(1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach." *Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018) (citing *Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008)). In moving for summary judgment, IPC argues that the 2017 TBE Form does not constitute a contract between IPC and NovaTech and is merely an unenforceable "agreement to agree" that lacks material terms. (ECF No. 26-1 at 20-31.) IPC also asserts that NovaTech has failed to establish that it has suffered damages. (*Id.* at 30-31.)

The parties do not dispute that a representative from each of the parties signed the 2017 TBE Form on November 27, 2017, and that IPC ultimately did not pay NovaTech for any services related to the 2017 RFP. They vigorously dispute, however, whether the 2017 TBE Form constitutes a binding contract such that IPC breached it when IPC failed to pay NovaTech for any services.

Under Wisconsin law, the Court must determine whether the parties intended to form a contract. *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016) (quoting

*Ginsu Prods., Inc. v. Dart Indus., Inc.*, 786 F.2d 260, 265 (7th Cir. 1986)). "When the material facts are not in dispute, the existence and interpretation of a contract are questions of law that the court may decide on a motion for summary judgment." *Am. Design & Build, Inc. v. Evanston Ins. Co.*, No. 12-CV-385, 2013 WL 12180536, at *4 (E.D. Wis. Sept. 20, 2013).

In this case, the undisputed facts make clear that the parties did not reach a meeting of the minds on the formation of a final contract. Rather, they agreed to collaborate on a bid and then, if the bid was accepted, to agree later on final contract terms. It is true that the 2017 TBE Form on which NovaTech bases its claim contains a short "Detailed Description" of the "Scope of Work" to be performed by NovaTech, a dollar amount for the "TBE Contract Amount," and the "% of Total Contract"—the proportion of dollar value to be performed by NovaTech as IPC's subcontractor. But these terms simply indicate the general services the parties expected NovaTech to render in exchange for an amount of money. The 2017 TBE Form clarifies that each party will be committing to a final contract at some unknown time in the future, not at present. In the section titled "Bidder/Proposer Commitment," IPC's representative Morgan confirmed that it "is true and accurate" that IPC "will enter into a contract with the TBE firm listed, for the service(s) and amount(s) specified when awarded this contract." In the section titled "TBE Affirmation," NovaTech's representative Brash "acknowledge[d] and accept[ed] this commitment to contract with my firm for the service(s) and dollar amount(s) specified herein…." Both affirmations, by their plain language, indicate the parties' commitment to Milwaukee County that they will, sometime in the future, enter into a contract to perform the work.

The Seventh Circuit has analyzed a similar case. In *Business Systems*, the Court of Appeals examined whether a DBE-registered subcontractor, Business Systems Engineering, Inc., brought a valid claim for breach of contract against the prime contractor, IBM, for work on a project awarded to IBM by the Chicago Transit Authority. *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 547 F.3d 882 (7th Cir. 2008). Like in this case, IBM and Business Systems submitted a preliminary document to the CTA explaining how much IBM would pay Business Systems and for which services. *Id.* at 884. Throughout the course of the project, IBM asked Business Systems to perform work on the project and paid Business Systems according to the work performed. *Id.* at 884-85. However, at the end of the project, IBM had not paid Business Systems the entire amount stated in the preliminary document submitted to the CTA. *Id.* at 885. Business Systems subsequently filed a breach of action claim against IBM for its failure to pay the full amount stated

in the preliminary document. *Id.* When reviewing Business Systems' claim, the Seventh Circuit affirmed the district court's conclusion that the preliminary document was "too vague and incomplete to establish a legally enforceable agreement by which [Business Systems] could hold IBM accountable for the alleged breach." *Id.* at 886-87 (quoting *Bus. Sys. Eng'g, Inc. v. IBM Corp.*, 520 F. Supp. 2d 1012, 1019 (N.D. Ill. 2007)). The same is true here.

"To be enforceable a contract must be definite and certain as to its basic terms and requirements. It must spell out the essential commitments and the obligations of each party with reasonable certainty." *Witt v. Realist, Inc.*, 18 Wis. 2d 282, 297 (1962). The 2017 TBE Form is missing important basic terms, such as details as to the scope of the project, specific tasks that NovaTech was to perform, the time in which NovaTech had to perform those tasks, the rate of pay for NovaTech's performance, and the expectations and conditions of fulfillment of the work. *See Bus. Sys.*, 547 F.3d at 885. The specific language of the 2017 TBE Form, including "will enter into a contract" and "this commitment to contract," is telling. Because "[a]greements to agree are not enforceable as contracts in Wisconsin," *C.G. Schmidt*, 825 F.3d at 805 (citing *Witt*, 18 Wis. 2d 282, 118 N.W.2d at 93-94), the 2017 TBE Form is not itself a valid contract.

NovaTech's arguments to the contrary do not change the analysis. "In Wisconsin, the party seeking to enforce a contract must demonstrate that there was a 'meeting of the minds,' that is, that the parties intended to form a contract." *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020) (quoting *Household Utilities, Inc. v. Andrews*, 71 Wis. 2d 17, 236 N.W.2d 663, 669 (1976)) (citing *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814 (7th Cir. 1987)). "The intent of the parties is generally 'derived from a consideration of their words, written and oral, and their actions.'" *Id.* (quoting *Household Utilities*, 236 N.W.2d at 669). "Wisconsin takes an objective view of 'intent,' and therefore '[s]ecret hopes and wishes count for nothing.'" *Id.* (quoting *Skycom*, 813 F.2d at 814).

When IPC first sent the 2017 TBE Form to Brash for her signature in November 2017, the fields for the terms were blank. By its plain terms, the parties were not making final commitments but were rather documenting their intended partnership for presentation to Milwaukee County as required for the RFP response. Indeed, later, in May 2018, Brash called Morgan to tell him they still needed to "pound this contract out." This shows even NovaTech understood that the 2017 TBE Form was merely an agreement to agree *in the future*. And, when the parties later attempted to develop a Scope of Work for NovaTech's role in the project, NovaTech refused to commit to

the work for the amount offered by IPC and the parties never reached a final agreement. Thus, the required meeting of the minds was never achieved. Accordingly, no contract binds the parties.

Moreover, even if NovaTech and IPC had formed a binding contract, NovaTech still faces an insurmountable hurdle. NovaTech cannot establish damages, an essential element of a breach of contract claim. "In Wisconsin a claimant cannot recover for speculative or conjectural damages." *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 227, 601 N.W.2d 627, 634 (1999). NovaTech seeks lost profits but its calculations are not legally supportable. NovaTech relies solely on Brash's "back-of-the-envelope" calculations to establish the amount of its lost profits. But her numbers are unsupported by data like deductions for the time and cost of hiring necessary independent contractors and other costs—all of which would be necessary for "the trial court or jury [to] properly estimate the amount." *Plywood Oshkosh, Inc. v. Van's Realty & Const. of Appleton, Inc.*, 80 Wis. 2d 26, 31, 257 N.W.2d 847, 849 (1977) (citing *Krcmar v. Wisconsin River Power Co.*, 270 Wis. 640, 72 N.W.2d 328 (1955)). "[D]amages should be proven by statements of facts rather than by mere conclusions of the witnesses, and a claimant's mere statement or assumption that [s]he has been damaged to a certain extent without stating any facts on which the estimate is made is too uncertain." *Id.* at 31-32, 849 (citations omitted). Unfortunately for NovaTech, "[l]ike many other internal projections, these represent hopes rather than the results of scientific analysis." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005); *see Alover Distributors, Inc. v. Kroger Co.*, 513 F.2d 1137, 1141 (7th Cir. 1975) (rejecting a plaintiff's calculation of damages that was "based on sheer conjecture and speculation"). Because the undisputed facts show there never was a meeting of the minds, and, even if there had been, NovaTech has not come forward with proper evidence of damages, the Court will grant IPC's motion for summary judgment on the breach of contract claim.

**II. NovaTech Did Not Unjustly Enrich IPC.**

Count II of NovaTech's complaint is a claim for unjust enrichment. (ECF No. 1-1 at ¶¶49-60.) NovaTech alleges that it conferred a benefit upon IPC by agreeing to be the designated TBE partner for IPC's response to Milwaukee County's RFP. (*Id.* at ¶50.) NovaTech complains that IPC knew its proposal would not be approved without a TBE partner such that it would be inequitable for IPC to retain all profits from the project. (*Id.* at ¶¶53-60.)

In Wisconsin,

> [a]n unjust enrichment claim requires: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof."

*Smith v. RecordQuest, LLC*, 989 F.3d 513, 520 (7th Cir. 2021), *reh'g denied* (Mar. 17, 2021) (quoting *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (footnote and quotations omitted)). Unjust enrichment "provides an equitable remedy when no legal remedy exists." *Id.* (citing *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987)).

IPC argues that NovaTech's claim fails because IPC did not retain all of the profits from its work on the project. (ECF No. 26-1 at 36.) Instead, IPC engaged another TBE-designated partner to work on the project after NovaTech refused to cooperate with it and Milwaukee County. (*Id.*) In response, NovaTech contends that IPC should not be allowed to reap the benefits of NovaTech's work in the prelude to the RFP award. (ECF No. 30 at 30-31.) NovaTech asserts that IPC used its "time, expertise, connections, and resources for its own benefit," and that NovaTech "earned the right to be IPC's TBE subcontractor on the Project." (*Id.* at 31.)

Based on the record, IPC was not unjustly enriched. While NovaTech is correct, in a sense, that it "earned the right" to be the TBE partner on IPC's winning bid, it gave up the right to part of the job (and any associated compensation) when it walked away from IPC instead of reaching a final agreement on its participation. Because of that action, Milwaukee County released IPC from the TBE commitment. IPC therefore did not retain the benefit of NovaTech's partnership; the County no longer required IPC to have a TBE-designated partner work on the project.

Further, while both IPC and NovaTech worked together, without pay, to bid on the project, IPC, unlike NovaTech, actually performed paid work for the County on the project. Having done the work, IPC is entitled to the compensation Milwaukee County agreed to pay. It would be inequitable to hold IPC responsible for NovaTech's obstinance. *See Sea-Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1312 (7th Cir. 1993) (citing *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir.1990)) ("We have defined 'unjust enrichment' as the receipt of money or its equivalent under circumstances that, in equity and good conscience, suggest that it ought not to be retained because it belongs to someone else."). NovaTech is not entitled to be paid for work it never performed.

And, ultimately, NovaTech has only itself to blame. It could have negotiated for compensation for its participation in the bid project or for a minimum payment if the County

awarded the contract to IPC. It did neither. Instead, it was content to expend efforts and proceed based on the terms in the 2017 TBE Form, which, as discussed above, was plainly an unenforceable agreement to agree. In these circumstances, NovaTech has no claim for unjust enrichment and summary judgment will be granted for IPC on Count II.

### III. NovaTech Is Not Entitled to Promissory Estoppel.

NovaTech's final cause of action is for promissory estoppel. (ECF No. 1-1 at ¶¶61-68.) NovaTech alleges that IPC promised to pay NovaTech for services performed pursuant to Milwaukee County's project and that NovaTech detrimentally relied on IPC's promise. (*Id.* at ¶¶62-63.) NovaTech seeks an order directing IPC to allocate work on the project to NovaTech. (*Id.* at ¶68.)

To win a promissory estoppel claim in Wisconsin, a plaintiff must prove: "(1) a promise that the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) action or forbearance induced by the promise; and (3) that injustice can be avoided only by enforcing the promise." *C.G. Schmidt*, 825 F.3d at 807 (citing *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 133 N.W.2d 267, 275 (1965)). "The first two requirements are questions of fact while the third is a question of law." *Id.* "Promissory estoppel is usually available only in limited circumstances and does not allow 'circumvention of carefully designed rules of contract law.'" *Skyrise*, 956 F.3d at 958 (quoting *C.G. Schmidt*, 825 F.3d at 807).

IPC argues that it never made an actionable promise to NovaTech, and that NovaTech never acted or specifically declined alternative work on the basis of a promise. (ECF No. 26-1 at 32-33.) IPC also contends that any reliance NovaTech placed on the 2017 TBE Form was unreasonable and that NovaTech has not suffered any injustice. (*Id.* at 34-35.) In contrast, NovaTech argues that an actionable promise exists based on the terms of the 2017 TBE Form, that it detrimentally and reasonably relied on IPC's promise, and that injustice to NovaTech can only be avoided by enforcement of the 2017 TBE Form. (ECF No. 30 at 28-30.)

NovaTech's position fails foremost because, as explained in connection with NovaTech's breach of contract claim, the 2017 TBE Form was an agreement to agree, not a specific, actionable promise. A conditional agreement is insufficient to be an actionable promise:

> A promise that is vague and hedged about with conditions may nevertheless have a sufficient expected value to induce a reasonable person to invest time and effort in trying to maximize the likelihood that the promise will be carried out. But if he

does so knowing that he is investing for a chance, rather than relying on a firm promise that a reasonable person would expect to be carried out, he cannot plead promissory estoppel.

*Cosgrove v. Bartolotta*, 150 F.3d 729, 733 (7th Cir. 1998) (citations omitted). Additionally, "[c]onditional promises of this kind are not a reasonable basis for reliance." *C.G. Schmidt*, 825 F.3d at 809 (discussing circumstances in which both parties expected further negotiations). NovaTech cannot win a promissory estoppel claim based on actions taken in the hope of winning an award. NovaTech "knew, or at least should have known, that the negotiations could fall apart before the parties entered into a binding agreement." *Id.*

NovaTech also cannot prove reliance. "To 'rely,' in the law of promissory estoppel, is not merely to do something in response to the inducement offered by the promise. There must be a cost to the promisee of doing it." *Cosgrove*, 150 F.3d at 733 (citing *Hoffman*, 133 N.W.2d at 275; *Creative Demos, Inc. v. Wal–Mart Stores, Inc.*, 142 F.3d 367, 369 (7th Cir. 1998)). NovaTech offers only unsupported conclusions in support of its reliance claim: that IPC has a policy preventing its partners from working with others on the same RFPs, but not that Brash gave up a specific, concrete opportunity with another bidder by partnering with IPC on the 2017 RFP; that the parties worked together for over a year in the hopes of being awarded several RFPs, including the 2017 RFP, but not that NovaTech spent all its time working with IPC exclusively on the 2017 RFP; and that Brash insisted on signing a complete 2017 TBE Form instead of a blank one as initially asked. These general statements fail to demonstrate a specific cost to NovaTech for its reliance on the 2017 TBE Form. NovaTech is not entitled to recover damages or specific performance under a promissory estoppel theory. IPC is entitled to summary judgment on Count III as well.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that IPC's motion for summary judgment, ECF No. 26, is **GRANTED**. The action is **DISMISSED** and the Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on August 25, 2021.

s/ Brett H. Ludwig
BRETT H. LUDWIG
United States District Judge